UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH ST. ROMAIN, JR.                                          CIVIL ACTION NO.

VERSUS                                                          14-660-SDD-RLB

GOVERNOR'S OFFICE OF HOMELAND
SECURITY AND EMERGENCY
PREPAREDNESS, ET AL.

### RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant Governor's Office of Homeland Security and Emergency Preparedness ("GOHSEP") and the *Motion for Summary Judgment*[2] by Defendant, Mark S. Riley ("Riley"). Plaintiff, Joseph St. Romain, Jr. ("Plaintiff") has filed an *Opposition*[3] to these motions, to which GOHSEP filed a *Reply*.[4] For the reasons which follow, the Court finds that the Defendants' motions should be granted.

### I.     FACTUAL BACKGROUND

Plaintiff filed this lawsuit in Louisiana state court alleging claims of federal and state constitutional violations and various state law claims against GOHSEP, Mark Riley, individually and in his official capacity as a Deputy Director for GOHSEP, the Livingston Parish Sheriff's Office ("LPSO"), and Jim Brown, individually and in his official capacity as the Uniform Operations Major for the LPSO.[5] Defendant Riley worked at GOHSEP with

---

[1] Rec. Doc. No. 29.
[2] Rec. Doc. No. 31.
[3] Rec. Doc. No. 42.
[4] Rec. Doc. No. 43.
[5] Rec. Doc. No. 1-2.
32517

Plaintiff's then-wife Stephanie St. Romain ("Stephanie").[6]   Plaintiff claims that, on September 30, 2013, Riley called Plaintiff and left a threatening message on his voicemail. Specifically, the voicemail left by Riley on Plaintiff's phone was as follows:

> "Joey, this is Mark Riley. I'm a friend of Stephanie's. Just so you know, I'm serious. Colonel in the United States Marine Corps, 33 years. If you do anything, I'm going to hunt you down, and don't underestimate me."

This voicemail was followed up by a text message from Riley to Plaintiff stating: "Joey – just left you a msg. Need to listen to it. Think I am joking – test me."[7] Plaintiff claims he reported these threats to GOHSEP's Director Kevin Davis, to no avail. Plaintiff also obtained information through a public records request which confirmed that Riley was the owner of the phone that left the threatening voicemail.

Plaintiff brought claims against GOHSEP under 42 U.S.C. § 1983 for failure to train and negligent supervision of Riley and for vicarious liability for Riley's state law torts pursuant to Louisiana law. In addition to state law claims, Plaintiff also asserted Section 1983 claims against Riley, alleging that Riley was acting "under color of law" in making the threats against him. The Court previously granted the motions of GOHSEP and Riley to dismiss the Section 1983 claims against those Defendants.[8]

GOHSEP and Riley now move for summary judgment on the state law claims asserted against them. The Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367. Plaintiff alleges that Riley's messages constitute assault under Louisiana tort law and support a claim for intentional infliction of emotional

---

[6] Plaintiff admits that, on August 20, 2013, a court in Livingston Parish issued a protective order between Plaintiff and Stephanie. The protective order terminated by its own terms on February 8, 2014. Rec. Doc. No. 13.
[7] Rec. Doc. No. 42, p. 4, n. 17.
[8] *Ruling*, Rec. Doc. No. 16.
32517

distress.  Plaintiff further claims that GOHSEP failed to train/supervise Riley and is vicariously liable under Louisiana law for the torts committed by Riley allegedly in the course and scope of his duties as a GOHSEP employee.

## II.   LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[10]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[11]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[12]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[13]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a

---

[9] Fed. R. Civ. P. 56(a).
[10] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[11] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[12] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[13] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
32517

reasonable jury could return a verdict for the nonmoving party.'"[14] All reasonable factual inferences are drawn in favor of the nonmoving party.[15] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[16] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[17]

### B. Mark Riley

#### 1. Assault

While Plaintiff does not specifically plead "assault" in his *Complaint*, both parties have argued this claim and the Court will address it. Under Louisiana law, "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."[18] "A battery is an intentional harmful or offensive contact with another.[19] Mere words do not constitute an assault.[20] Yet, a combination of threats, present ability to carry out the threats, and reasonable apprehension of harmful or offensive contact may suffice.[21]

---

[14] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[15] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[16] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[17] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[18] La. R.S. 14:36.
[19] *Groff v. Southwest Beverage Co., Inc.*, 2008-625 (La. App. 3 Cir. 11/5/08); 997 So.2d 782, 787, citing *Caudle v. Betts*, 512 So.2d 389 (La.1987).
[20] *Id.*, citing *Muslow v. A.G. Edwards & Sons, Inc.*, 509 So.2d 1012 (La.App. 2 Cir.1987), *writ denied*, 512 So.2d 1183 (La.1987).
[21] *Id.*, citing *Muslow*, 509 So.2d at 1012.
32517

Plaintiff contends that, notwithstanding that the threats were made by electronic means, they constitute assault under Louisiana law because Riley not only threatened violence – "hunt you down" – but emphasized his status as a Colonel in the Marine Corps and that he was not playing around. Additionally, because Riley admitted in his deposition that he intended to scare Plaintiff,[22] Plaintiff argues that he has presented a material fact issue as to whether he experienced "reasonable apprehension of an imminent battery."

Riley contends his actions do not constitute assault under Louisiana law because his intent was only to warn Plaintiff to stop his alleged harassment of Stephanie. Riley contends he has never met Plaintiff, was unaware of his whereabouts, and was home with his kids at the time the call was made which rendered him unable to act on such a threat with any "imminence." The Defendants rely on the decision in *Fox v. Wolfson*[23] in support of this position. In *Fox*, the district court for the Western District of Louisiana held that the plaintiff had failed to state a claim for assault because "future threats and threats via electronic communications from a defendant who apparently resides in Utah do not rise to the level of an imminent battery."[24] Plaintiff contends that *Fox* is distinguishable from this case as that defendant resided in Utah rather than being close enough to carry out his threat as Plaintiff claims Riley was. The Court disagrees.

While not binding precedent in this case, the Court is guided by the reasoning and analysis in *Brower v. Ackerly*.[25] The *Brower* case involved a plaintiff who had received a series of anonymous harassing and threatening telephone calls following his involvement

---

[22] Rec. Doc. No. 42-2, p. 42 (Riley Deposition, p. 47, Exhibit B).
[23] No. 2:10-CV-0812, 2010 WL 3907656 (W.D. La. Sept. 27, 2010).
[24] *Id.* at *2, citing *Martin v. Signer*, 27,694, p. 3 (La. App. 2 Cir. 12/6/95); 665 So.2d 709, 711.
[25] 88 Wash. App. 87, 943 P.2d 1141 (1997).
32517

in the civil affairs of the defendants who allegedly placed the calls.[26] Summary judgment was granted in favor of the defendants, and the plaintiff appealed.

The phone calls continued over a period of 20 months and involved comments made in "an aggressive, mean spirited voice" to "get a life,"[27] and grew increasingly more threatening with statements like "I'm going to find where you live and I'm going to kick your ass," "you're finished," and "cut you in your sleep, you sack of sh*t."[28] The plaintiff filed a police report and also brought suit alleging civil assault and claimed that he felt "hunted down" and experienced feelings of panic, terror, insecurity, lightheadedness, sleeplessness, and an inability to concentrate.[29]

The Washington Court of Appeals noted that "[t]he elements of civil assault have not been frequently addressed in Washington cases"; however, the "gist of the cause of action is 'the victim's apprehension of imminent physical violence caused by the perpetrator's action or threat.'"[30] The court noted the Restatement (Second) of Torts, which defines assault as follows:

> (1) An actor is subject to liability to another for assault if
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
> (b) the other is thereby put in such imminent apprehension.[31]

The defendants argued that the dismissal of the plaintiff's assault claim was appropriate because the threatening words were not accompanied by any physical acts

---

[26] *Id.*
[27] *Id.* at 1143.
[28] *Id.*
[29] *Id.* at 1144.
[30] *Id.*, citing *St. Michelle v. Robinson*, 52 Wash.App. 309, 313, 759 P.2d 467 (1988).
[31] *Id.* at 1144-45.

32517

or movements. The plaintiff acknowledged this fact, but argued that the spoken threats constituted an assault in light of the surrounding circumstances, such as the calls being made to his home late at night.[32]

The Court of Appeals affirmed the dismissal of the assault claims, finding as follows:

> Whether the repeated use of a telephone to make anonymous threats constitutes acts or circumstances sufficient to render the threats assaultive is an issue we need not resolve because we find another issue dispositive: the physical harm threatened in the telephone calls to Brower was not imminent.
>
> To constitute civil assault, the threat must be of imminent harm. As one commentator observes, it is "the immediate physical threat which is important, rather than the manner in which it is conveyed." The Restatement's comment is to similar effect: "The apprehension created must be one of imminent contact, **as distinguished from any contact in the future.**" The Restatement gives the following illustration: "A threatens to shoot B and leaves the room with the express purpose of getting his revolver. A is not liable to B."
>
> The telephone calls received by Brower on July 19 contained two explicit threats: "I'm going to find out where you live and I'm going to kick your ass"; and later, "you're finished; cut you in your sleep". The words threatened action in the near future, but not the imminent future. The immediacy of the threats was not greater than in the Restatement's illustration where A must leave the room to get his revolver. **Because the threats, however frightening, were not accompanied by circumstances indicating that the caller was in a position to reach Brower and inflict physical violence "almost at once," we affirm the dismissal of the assault claim.**[33]

The Court finds the analysis and reasoning of the *Brower* court applicable to the instant matter. While the voicemail and text message from Riley to Plaintiff were clearly intended to scare him, the statements fail to establish the imminence element required to

---

[32] *Id.* at 1145.
[33] *Id.* (internal citations omitted)(emphasis added).
32517

establish a claim of assault. These threats referenced some action in the future, not the immediate future. Leaving a voicemail and text did not place Riley in a position to reach Plaintiff and inflict violence "almost at once." Riley is entitled to summary judgment on Plaintiff's assault claim.

### 2. Intentional Infliction of Emotional Distress ("IIED")

The elements of an IIED claim under Louisiana law are: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress and knew that severe emotional distress would be substantially certain to result from the conduct.[34] The defendant's "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[35] Liability for IIED does not arise from "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[36] A plaintiff's anguish must be "extreme" such that "no reasonable person could be expected to endure it."[37]

Plaintiff contends that the threats made by Riley are extreme and outrageous and not justified in a civilized society as they were made with the intent to scare and intimidate Plaintiff with the knowledge that such threats would cause him severe and substantial emotional distress.[38] Plaintiff argues that he received medical treatment for the severe emotional distress he suffered as a result of Riley's threats, and that sufficient summary

---

[34] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991).
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] Rec. Doc. No. 42, p. 6.
32517

judgment evidence is present such that reasonable jurors could find for him on the IIED claim.

The Court finds that Plaintiff has failed to present summary judgment evidence that Riley's two messages to Plaintiff are anything more than mere insults and threats as described above.  Moreover, courts have held that "[c]onduct that is simply tortious or illegal does not rise to the level of extreme and outrageous."[39]  The Court has already held that the Riley's conduct was not even tortious.  There is no summary judgment evidence or jurisprudence which would support a finding that these two threats under the circumstances are such that no reasonable person in society could be expected to endure it.

Plaintiff relies on *Sullivan v. Malta Park*[40] for the proposition that "even posing offensive questions (regarding a marital affair) alone"[41] is sufficient to state a claim for IIED.  Plaintiff's reliance is misplaced.  In *Sullivan*, the court upheld a claim of IIED brought by a seventy year old plaintiff who was terminally ill and living in an assisted living facility against her adversary's lead attorney who repeatedly badgered her during a deposition with knowingly false questions that were immaterial and irrelevant to the legal matter at hand.[42]  There is simply no comparison to either the severity of conduct or the frailty of the alleged victim in *Sullivan* and the conduct and victim in the case before the Court.

The Court is guided by the decision in *Rhyce v. Martin*,[43] wherein a former female

---

[39] *Deville v. Robinson*, 2013-832 (La. App. 3 Cir. 2/26/14); 132 So.3d 1277, 1280, citing *Nicholas v. Allstate Ins. Co.*, 99–2522 (La.8/31/00); 765 So.2d 1017.
[40] 2014-0478 (La. App. 4 Cir. 12/10/14); 156 So.3d 751.
[41] Rec. Doc. No. 42, p. 6.
[42] *Sullivan*, 156 So.3d at 752.
[43] 173 F.Supp.2d 521 (E.D. La. 2001).
32517

firefighter brought suit against the district and several officials alleging various claims including IIED. In addition to several discrimination and employment claims, the plaintiff also alleged that the Defendants had continually harassed her and even made death threats that were particularly damaging given her dangerous occupation.[44] The Court upheld this plaintiff's IIED claim, finding:

> Although "[l]iability does not extend to mere ... threats," *White*, 585 So.2d at 1209, the Court finds that the threats described in Ms. Rhyce's complaint -- threats involving a plausible possibility of death by fire — can form the basis of a claim for intentional infliction of emotional distress under Louisiana law. Moreover, when viewed in context, the threats, even if made on just one occasion, can be seen as part of "a pattern of deliberate, repeated harassment over a period of time." *Nicholas*, 765 So.2d at 1026.[45]

The threats found by the court to be actionable for IIED in *Rhyce* provide a stark contrast to the two threats present in the case before the Court. Riley's threats, while clearly implying some physical harm, do not constitute death threats, and there is no summary judgment evidence before the Court that these two threats, not made in person, are part of a "a pattern of deliberate, repeated harassment over a period of time."[46] Defendant is entitled to summary judgment on Plaintiff's IIED claim.

### C. GOHSEP

#### 1. Vicarious Liability

An employer is liable for the torts of an employee committed while the employee is acting within the course and scope of his employment.[47] As the Court has held that Riley committed no underlying tort, Plaintiff's claim against GOHSEP for vicarious liability

---

[44] *Id.* at 534.
[45] *Id.*
[46] *Id.*
[47] La. Civ.Code art. 2320.

fails as a matter of law.[48]  Alternatively, even if Riley's conduct was deemed tortious, the Court finds that the conduct was not within the course and scope of his duties with GOHSEP.

"Vicarious liability rests in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities."[49]  An employer's vicarious liability for conduct which is not its own extends only to the employee's tortious conduct that is within the course and scope of employment.[50]  "Course" refers to the time and place that the conduct occurred, while "scope" examines the employment-related risk of injury.[51]

In *Baumeister v. Plunkett*, the Louisiana Supreme Court held that the court of appeals erred in holding a hospital liable for the sexual battery committed by one of its nursing supervisors on a co-employee during working hours on the hospital's premises.[52]  In so holding, the Louisiana Supreme Court established a four-part test for vicarious liability: (1) whether the tortious act was primarily employment rooted; (2) whether the act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether the act occurred during the hours of employment.[53]

Plaintiff contends that there are numerous factual issues that constitute disputes over whether Riley was acting within the course and scope of his employment duties at

---

[48] *See Clayton v. Zullo*, No. 10-1228, 2014 WL 790869 at *10 (E.D. La. Feb. 26, 2014)(citing *Reed v. House of Decor, Inc.*, 468 So.2d 1159, 1160–61 (La. 1985)).
[49] *Richard v. Hall*, 2003-1488 (La. 4/23/04); 874 So.2d 131, 138.
[50] *Kelley v. Dyson*, 10-61 (La.App. 5 Cir. 5/25/10); 40 So.3d 1100, 1105.
[51] *Baumeister v. Plunkett*, 673 So.2d 994, 996 (La.1996).
[52] *Id.* at 999.
[53] *Id.* at 996–97 (citation omitted).
32517

the time he left the voicemail and texted Plaintiff. Plaintiff also contends that, because the call was made on a cell phone paid for and provided by GOHSEP, and because Riley discussed the subject of the threats with Stephanie during the work day, there is sufficient evidence that Riley was in the course and scope of his duties as Deputy Director of GOHSEP. The Court finds no such material issues of fact present such that summary judgment would be improper if Riley had committed a tort.

It is undisputed that the voicemail and text messages were left between 9:00 p.m. and 9:30 p.m. on the date in question.[54] It is undisputed that Riley never used his job title or mentioned his employment with GOHSEP in either message. Riley's allegedly tortious conduct took place at his home, not on GOHSEP premises and not during Riley's work hours.[55] The fact that Riley may occasionally check e-mails or work from home does not render this conduct within the course and scope of his employment duties for GOHSEP, and Plaintiff cites no law or jurisprudence that would support such a position. GOHSEP's motion for summary judgment on the vicarious liability claim is GRANTED as Plaintiff has committed no underlying tort, or, alternatively, for the reasons set forth above.

### 2. Failure to Train/Supervise

Plaintiff has also alleged that GOHSEP failed to train and/or supervise Riley. The determination of liability in a negligence case usually requires proof of five separate elements: duty, breach of duty, cause-in-fact, scope of liability or scope of protection, and damages.[56] A claim against an employer for the torts of an employee based on the

---

[54] Rec. Doc. No. 29-5.
[55] Rec. Doc. No. 29-4, Deposition of Mark Riley, pp. 28-31.
[56] *Kelley v. Dyson*, 08-1202 (La. App. 5 Cir. 3/24/09); 10 So.3d 283, 287, citing *Fowler v. Roberts*, 556 So.2d 1, 4–5 (La.1989).
32517

employer's alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis used for all negligence cases in Louisiana.[57] When an employer hires an employee who, in the performance of his duties will have a unique opportunity to commit a tort against a third party, the employer has a duty to exercise reasonable care in the selection, training, and/or supervision of that employee.[58]

Again, as the Court has found that Riley committed no tort, the failure to train/supervise claim likewise fails. Additionally, there is no evidence that employment by GOHSEP gave Riley a unique opportunity to inflict harm on the Plaintiff. The two threats to Plaintiff were made after work and off the work premises. There is no summary judgment evidence establishing that Riley's employment by GOHSEP created a unique opportunity for his actions. Accordingly, there is nothing to establish a duty on the part of GOHSEP part to protect the Plaintiff from the particular harm that occurred. GOHSEP is likewise entitled to summary judgment on this claim.

---

[57] *Griffin v. Kmart Corp.*, 00–1334, p. 6 (La.App. 5 Cir. 11/28/00), 776 So.2d 1226, 1231.
[58] *Id.*
32517

### D. CONCLUSION

For all of the reasons set forth above, the Defendants' *Motions for Summary Judgment*[59] are GRANTED. *Judgment* will be entered when all other claims in this case have been resolved.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on June 8, 2016.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[59] Rec. Doc. Nos. 29 & 31.

32517