# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JOSEPH ST. ROMAIN, JR.                                   CIVIL ACTION NO.

VERSUS                                                   14-660-SDD-RLB

GOVERNOR'S OFFICE OF HOMELAND
SECURITY AND EMERGENCY
PREPAREDNESS, ET AL.

## RULING

This matter is before the Court on the *Motion for Partial Summary Judgment*[1] by

Defendant Jason Ard, in his official capacity as Sheriff of Livingston Parish ("Defendant"

or "Sheriff Ard").  Plaintiff, Joseph St. Romain, Jr. ("Plaintiff") has filed an *Opposition*[2] to

this motion, to which Defendant filed a *Reply*.[3]  For the reasons which follow, the Court

finds that the Defendant's motion should be granted.

## I.    FACTUAL & PROCEDURAL BACKGROUND

The facts which form the basis of this case are rooted in a contentious marriage

and divorce between Plaintiff and Stephanie Morgan ("Morgan").  In 2010, Morgan filed

Protective Orders against Plaintiff.  After filing for divorce in October of 2013, Plaintiff and

Morgan were ultimately divorced.

On or about July 24, 2013, the 21st Judicial District Court of Livingston Parish

issued a Temporary Restraining Order[4] which was set for hearing on August 8, 2013.

---

[1] Rec. Doc. No. 30.
[2] Rec. Doc. No. 40.
[3] Rec. Doc. No. 47.
[4] Rec. Doc. No. 40-2, pp. 49-53.
33019

Plaintiff contends this was the only protective order he was ever served with although a second order was later filed with the court.  The July 24 Order prohibited Plaintiff from, in particular, going within 100 feet of Morgan without the express written permission of the court and going within 100 yards of Morgan's residence.[5]  The Order did allow Plaintiff to return to the residence, accompanied by a law enforcement officer, at a future date and time agreed upon by the parties in order to recover his personal clothing and necessities.[6]

Plaintiff claims he never went within 100 yards of Morgan's residence during the time frame set forth in the July 24 Order.  Plaintiff further claims he was never served with the Order of August 20, 2013 that expired on February 8, 2014.[7]  The August 20 Order prohibited Plaintiff from driving into Morgan's subdivision.[8]

On July 30, 2013, Livingston Parish Sheriff's Office ("LPSO") Deputy Cory Winburn[9] responded to a complaint by Morgan that Plaintiff had violated a protective order.  Specifically, Morgan claimed that she had seen Plaintiff outside her window.[10] However, Winburn testified that, when he responded to this complaint, he did not see Plaintiff or his vehicle in the area.[11]  At the time of this call, Winburn also testified that dispatch advised that they had no knowledge of any protective orders in place at the time of this complaint.[12]  Winburn testified that no photographs or evidence were taken that day, and Morgan did not file charges against Plaintiff for this alleged incident.[13]

---

[5] *Id.* at pp. 50-51.
[6] *Id.* at p. 52.
[7] *Id.* at pp. 56-61.
[8] *Id.*
[9] While Sheriff Ard refers to Deputy Cory Winnborne, the Court utilized the spelling as provided in his deposition:  Cory Winburn. (Rec. Doc. No. 40-2, p. 62).
[10] Rec. Doc. No. 40-2, p. 67, Deposition of Cory Winburn, p. 15, lines 11-12.
[11] *Id.*, Deposition of Cory Winburn, p. 15, lines 17-21.
[12] *Id.* at p. 70, Deposition of Cory Winburn, p. 19.
[13] *Id.* at p. 71, 75, Deposition of Cory Winburn, pp. 20, 29.

33019

Deputy Winburn was again dispatched to Morgan's residence on September 9, 2013.  Once again, dispatch could not confirm that Plaintiff had been served with any protective orders on this date.[14]  Winburn admitted that he told Plaintiff over the phone that he was "going to jail."[15]  Winburn testified that he advised Plaintiff that he was going to jail for violating Louisiana law, specifically the offenses listed in the report:  stalking, cyber stalking, and improper telephone communication.[16]

Plaintiff contends that, from August 2013 through December 2013, LPSO deputies intimidated and harassed Plaintiff on many occasions.  Plaintiff claims he was arrested by Deputy Adam Holden for allegedly violating a protective order.[17]  Plaintiff alleges that Holden told him:  "I'm going to get you," and "you don't need to be worrying about what's going on at this house, no matter who's here.  I'm f*cking your wife, so it doesn't matter who else is f*cking your wife, you don't … need to worry about all of this."[18]  Plaintiff contends he was taken to the Livingston Parish Detention Center and released the following day.[19]

Defendant Jim Brown, Uniform Operations Major for the LPSO, testified that he overheard general conversations regarding Plaintiff's alleged violation of a protective order, but could not recall specific discussions about the exact provisions of the protective order.  Specifically, Brown stated that he was "made privy to an ongoing issue between Mr. St. Romain and his wife in the subdivision,"[20] and that he heard discussions with

---

[14] *Id.* at p. 74, Deposition of Cory Winburn, p. 26, lines 15-19.
[15] *Id.* at p. 76, Deposition of Cory Winburn, p. 32, lines 12-14.
[16] *Id.* at pp. 76-77, Deposition of Cory Winburn, pp. 33-34.
[17] *Id.* at p. 9, Deposition of Joseph Alvin St. Romain, Jr., p. 40.
[18] *Id.*, Deposition of Joseph Alvin St. Romain, Jr., p. 40, lines 15-20.
[19] *Id.* at pp. 10-11, Deposition of Joseph Alvin St. Romain, Jr., p. 43-44.
[20] *Id.* at p. 100, Deposition of Jim Brown, p. 45, lines 10-12.
33019

subordinates "discussing his repetitive violating of the protective order."[21]   However, Plaintiff claims Brown had not reviewed any protective orders prior to the date of Plaintiff's arrest on October 3, 2013.

Plaintiff claims that Brown was working an extra duty for South Point Subdivision Homeowners Association on October 3, 2013.  Brown acknowledged that he was in his LPSO uniform and using his LPSO unit on that night, in addition to using his LPSO issued laptop, cell phone, and weapon.[22]  Plaintiff contends that, as he was driving home on this night from Maurepas, Louisiana, he felt unsafe because he was being tailed by an unmarked unit with bright lights.[23]  Plaintiff claims that, rather than leading the tailing car to his residence, he chose to head towards Denham Springs and ultimately turned into South Point Subdivision, where Morgan resides, because he was unfamiliar with Denham Springs.  However, Plaintiff claims that he never turned onto Morgan's street.[24]

Plaintiff admits in his *Complaint* that he ran three stop signs in an attempt to flee.[25] However, Plaintiff testified that, after he stopped at a stop sign, Brown's unit (which was following him) "charged towards Mr. St. Romain's truck."[26]  Plaintiff pulled over and exited as Brown initiated his blue overhead lights.  Plaintiff alleges that Brown stated to him:  "I got you, you're going to jail,"[27] and "I knew it was your f*cking ass" when Plaintiff presented Brown his driver's license.[28]  Plaintiff contends, and Brown's testimony

---

[21] *Id.*, Deposition of Jim Brown, p. 45, lines 13-14.
[22] *Id.* at pp. 102-104, Deposition of Jim Brown, pp. 48-50.
[23] *Id.* at p. 11, Deposition of Joseph Alvin St. Romain, Jr., p. 44-45.
[24] *Id.* at p. 12, Deposition of Joseph Alvin St. Romain, Jr., p. 45.
[25] Rec. Doc. No. 1-2, ¶ 8.
[26] Rec. Doc. No. 40, p. 5.
[27] Rec. Doc. No. 40-2, p. 13, Deposition of Joseph Alvin St. Romain, Jr., p. 46, line 4.
[28] *Id.*, Deposition of Joseph Alvin St. Romain, Jr., p. 46, lines 8-10.
33019

confirms, that Plaintiff never resisted and was compliant throughout this arrest.[29]  Plaintiff claims he told Brown that he had an upset stomach to which Brown responded by grabbing and twisting Plaintiff's arm and placing him in handcuffs.[30]  Plaintiff claims that after he was handcuffed, Brown turned him around and punched him in the gut, causing Plaintiff to defecate in his clothing.[31]  Plaintiff contends Brown shoved him into the backseat of his unit while laughing at him.[32]  Plaintiff further contends that, at this point, he had still not been told why he was being arrested.[33]

Plaintiff cites the protective order record which stated:  "Do not search, detain, or arrest based solely on this record.  Contact entering agency to confirm status and terms of protective order."[34]  Despite this mandate, Brown admitted that he did not contact any agency,[35] that the protective order did not prohibit Plaintiff from entering South Point Subdivision,[36] that he could not recall if he contacted dispatch that night,[37] and that he was unaware whether Plaintiff had been served with the protective order.[38]

Plaintiff claims that, after he was placed in the unit, Brown searched his truck without consent or a warrant, found a protective order after rifling through paperwork in the truck, and proclaimed, "we got his f*cking ass."[39]  Although Brown claims he saw the protective order in plain view through the truck windows, Plaintiff argues that his truck has

---

[29] *Id.* at p. 105, Deposition of Jim Brown, p. 65.
[30] *Id.* at p. 13, Deposition of Joseph Alvin St. Romain, Jr., p. 46.
[31] *Id.*
[32] *Id.*
[33] *Id.* at p. 15, Deposition of Joseph Alvin St. Romain, Jr., p. 48.
[34] *Id.* at p. 116. (p. 2 of Protective Order).
[35] *Id.* at p. 106, Deposition of Jim Brown, p. 71.
[36] *Id.* at p. 108, Deposition of Jim Brown, p. 76.
[37] *Id.* at p. 109, Deposition of Jim Brown, p. 83.
[38] *Id.* at p. 110, Deposition of Jim Brown, p. 100.
[39] *Id.* at p. 14, Deposition of Joseph Alvin St. Romain, Jr., p. 47, lines 11-12.
33019

dark tinted windows, and the papers were inside manila folders outside of plain sight.[40]

While being transported, Plaintiff contends that he was repeatedly threatened and told that if he spoke, he would receive additional charges.[41]  Upon arriving at the detention center, Plaintiff claims he requested a shower considering that he was soiled but was refused.[42]  Plaintiff was ultimately charged with violating the protective order and running multiple stop signs, although the stop sign charges were later dismissed.[43]  Plaintiff also claims that Deputy Justin DePhillips, who signed the October 3 arrest warrant, admitted he was not sworn before signing, nor did he sign before a notary.[44]

Plaintiff claims that he was arrested for a third time by LPSO deputies when he drove to Morgan's house after Morgan's sister allegedly texted Plaintiff that she was "getting his things."[45]  Plaintiff apparently took this as a threat to destroy his property because he had not yet been able to retrieve his belongings from the residence.[46]  When Plaintiff approached Morgan through the window to ask what was going on, he alleges she sprayed him with wasp spray.[47]  Later this same day, a LPSO deputy went to Plaintiff's house and allegedly entered his home without consent or a warrant and handcuffed Plaintiff without allowing him to get dressed or put on shoes.[48]  Plaintiff also claims he was refused medical treatment for the wasp spray.[49]  While in custody, Plaintiff

---

[40] *Id.* at 20, Deposition of Joseph Alvin St. Romain, Jr., p. 59.
[41] *Id.* at p 26, Deposition of Joseph Alvin St. Romain, Jr., p. 68, lines 5-6 ("I was told if I open my f*cking mouth one more time, there will be several charges added to your list.").
[42] *Id.* at p. 25, Deposition of Joseph Alvin St. Romain, Jr., p. 65.
[43] *Id.* at p. 27, Deposition of Joseph Alvin St. Romain, Jr., p. 70.
[44] *Id.* at pp. 120-121, Deposition of Justin DePhillips, pp. 30-31.
[45] *Id.* at p. 23, Deposition of Joseph Alvin St. Romain, Jr., p. 63, line 20.
[46] *Id.* at p. 24, Deposition of Joseph Alvin St. Romain, Jr., p. 64.
[47] *Id.*
[48] *Id.* at p. 32, Deposition of Joseph Alvin St. Romain, Jr., p. 88.
[49] *Id.* at p. 47, Deposition of Joseph Alvin St. Romain, Jr., p. 176.
33019

contends he was subjected to threats and mistreatment by Deputy Holden.  Plaintiff claims Holden took his cell phone and demanded his passcode or he would "bust it into pieces."[50]

Plaintiff also contends that, when he was granted access to the residence to obtain his belongings, the LPSO deputy accompanying him refused to allow him to take pictures of disputed items and threatened to "shut it down" when Plaintiff argued with Morgan over the property.[51]

Plaintiff alleges that, as a result of the repeated false arrests by the LPSO, all stemming from a protective order never served upon him and for which no probable cause or warrant existed, he was terminated from his job on January 15, 2014, a position he had previously held for fourteen years.[52]  Plaintiff claims that he has suffered from anxiety because of the threats, harassment, and arrests.  He claims he suffers from uncontrollable shaking, cold sweats, and loss of sleep,[53] not to mention the physical pain to his hands and wrists from handcuffing.[54]

Plaintiff filed this lawsuit in Louisiana state court alleging claims of federal and state constitutional violations and various state law claims against Sheriff Jason Ard ("Ard") in his official capacity as Sheriff of Livingston Parish[55] and Jim Brown ("Brown"), individually

---

[50] *Id.* at p 21, Deposition of Joseph Alvin St. Romain, Jr., p. 60.
[51] *Id.* at pp. 16, 36; Deposition of Joseph Alvin St. Romain, Jr., pp. 50, 103.
[52] *Id.* at pp. 2-3, 34-35; Deposition of Joseph Alvin St. Romain, Jr., pp. 13-14, 96-97.
[53] *Id.* at pp. 30, 37-38; Deposition of Joseph Alvin St. Romain, Jr., pp. 80, 106-107.
[54] *Id.* at p. 42, Deposition of Joseph Alvin St. Romain, Jr., p. 111.
[55] Plaintiff was granted leave to amend the pleadings to name as the proper Defendant Jason Ard, Sheriff of Livingston Parish rather than the Livingston Parish Sheriff's Office. *See* Rec. Doc. Nos. 24 & 25.
33019

and in his official capacity as the Uniform Operations Major for the Livingston Parish Sheriff's Office ("LPSO").[56]  The Defendants removed this case to federal court.

Plaintiff claims that Brown searched his truck without a warrant, falsely arrested him, and used excessive force against him in making that arrest.[57]  Plaintiff claims that he was falsely arrested and charged in Livingston Parish,[58] which Sheriff Ard interprets as a claim that Sheriff Ard falsely charged and arrested him.  Plaintiff also claims that Sheriff Ard is vicariously liable for the torts of Brown and other LPSO deputies, including harassment, threats, conducting illegal vehicle searches, unlawful arrest, assault, battery, and excessive force.[59]  Additionally, Plaintiff alleges that Sheriff Ard negligently trained and failed to supervise Brown and the other deputies of the LPSO.[60]

Sheriff Ard now moves for partial summary judgment on several of these claims.  First, Sheriff Ard contends he cannot be held vicariously liable for the actions of his deputies under 42 U.S.C. § 1983.  Second, Sheriff Ard contends Plaintiff has failed to present summary judgment evidence to support a municipal liability claim for failing to train and/or supervise employees, or any evidence that Sheriff Ard adopted a policy or custom that caused Plaintiff's alleged constitutional deprivations or was adopted in deliberate indifference to Plaintiff's constitutional rights.  Third, Sheriff Ard contends that, because he has only been sued in his official capacity, and because he never participated in the charging or arrest of Plaintiff, he cannot be held liable for false arrest in his individual

---

[56] Rec. Doc. No. 1-2.  Defendants GOHSEP and Mark Riley have been dismissed from this suit pursuant to the Court's *Ruling* of June 8, 2016, Rec. Doc. No. 52.
[57] Rec. Doc. No. 1-2, ¶ 8.
[58] *Id.* ¶ 13.
[59] *Id.*, ¶¶ 13, 22; Rec. Doc. No. 25, ¶¶ 16-17.
[60] Rec. Doc. No. 25, ¶ 20.
33019

capacity.  Finally, Sheriff Ard contends Plaintiff has not presented summary judgment evidence to support claims for harassment, intimidation, or threats.[61]

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[62]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[63]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[64]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[65]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[66]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a

---

[61] While denying liability, Sheriff Ard acknowledges that Plaintiff may have a vicarious liability claim against him for the alleged state law claims against Defendant Brown; thus, Defendants do not seek summary judgment as to those claims.
[62] Fed. R. Civ. P. 56(a).
[63] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[64] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[65] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[66] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
33019

reasonable jury could return a verdict for the nonmoving party.'"[67]  All reasonable factual inferences are drawn in favor of the nonmoving party.[68]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[69]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[70]

### B. Federal Claims under Section 1983 – *Monell* Liability

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"[71] In order to state a claim under 42 U.S.C. § 1983, the plaintiff must establish two elements: "(1) that the conduct in question deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and (2) that the conduct or deprivation complained of was committed by a person acting under color of state law."[72] As for the first element, 42 U.S.C. § 1983 only imposes liability for violations of rights protected by the United States Constitution—not for violations of duties of care arising out of tort law.[73]  As to the second element, a "plaintiff must identify defendants who were

---

[67] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[68] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[69] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[70] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[71] *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).
[72] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 610 (E.D.La. 1998). *See also*, *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 500 (M.D. La. 2013).
[73] *Griffith v. Johnston*, 899 F.2d 1427, 1436 (5th Cir. 1990).
33019

either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged."[74]

Under 42 U.S.C. § 1983, local officials cannot be found liable solely because they employ an alleged tortfeasor.[75]  "Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment and cannot withstand summary judgment."[76]  Accordingly, Plaintiff's claims of harassment, intimidation, or threats cannot form the basis of a Section 1983 claim.  The only claims considered under Section 1983 are Plaintiff's claims of unlawful arrest and excessive force.

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[77] Official-capacity suits generally represent simply another way of pleading an action against an entity of which an officer is an agent.[78]  However, to be liable in one's official capacity under Section 1983, the defendant must have been delegated policy-making authority under state law.[79]  In contrast, a state actor may have Section 1983 liability in his/her individual capacity for actions causing the deprivation of a federal right taken under color of state law.

---

[74] *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

[75] *Francois v. Jefferson Parish Sheriff's Office*, No.  2013 WL 654640 at *6 (E.D. La. Feb. 21, 2013)(citing *Monell v. Dep't Soc. Servs. of the City of New York*, 436 U.S. 658, 694–95 (1978).

[76] *Jackson v. Liberty County*, 860 F.Supp. 360, 363 (E.D. Tex. 1994)("In *Slagel v. Shell Oil Refinery*, 811 F.Supp. 378, 382 (C.D.Ill.1993), *aff'd*, 23 F.3d 410 (7th Cir.1994) (table), the court noted: '[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983.' (citations omitted); *See also Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir.1987); *Wilson v. Southwest Airlines*, 517 F.Supp. 292, 304–05 (N.D.Tex.1981))".

[77] *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478 (5th Cir. 2000).

[78] *See Broussard v. Lafayette City-Parish Consolidated Government*, 45 F.Supp.3d 553, 571 (W.D. La. 2014).

[79] *Terry v. City of New Orleans*, 523 F.Supp.2d 486, 492 (E.D. La. 2007)(quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988).

33019

Plaintiff has asserted claims arising under 42 U.S.C. § 1983 against Sheriff Ard in his official capacity only. "An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent."[80] To determine whether a public official is liable in his official capacity, "the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983."[81] Although municipalities cannot be held liable in a Section 1983 action under the theory of *respondeat superior*, they may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[82] Municipal liability under 42 U.S.C. § 1983 requires proof of the following three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."[83] "Proof of these three elements is necessary 'to distinguish individual violations perpetrated by local government employees form those that can be fairly identified as actions of the government itself.'"[84]

For present purposes, an official policy is either:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so

---

[80] *Hills v. Stevens*, 2012 WL 3779138, *3 (M.D.La. Aug. 31, 2012) (citing, *Kentucky v. Graham*, 473 U.S.159, 165-66, 105 S.Ct. 3099, 3104-06, 87 L.Ed. 2d 114 (1985)).
[81] *Quatroy v. Jefferson Parish Sheriff's Office*, 2009 WL 1380196, *3 (E.D.La. May 14, 2009)(hereafter *Quatroy*).
[82] *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) (hereafter *Monell*).
[83] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)(citing *Monell*, 436 U.S. at 694).
[84] *Quatroy*, 2009 WL 1380196, *4 (citing *Piotrowski*, 237 F.3d 567, at 578).
33019

common and well settled as to constitute a custom that fairly represents municipal policy.[85]

### 1. Vicarious Liability

Sheriff Ard moves for summary judgment for any vicarious liability claim against him under Section 1983.   Plaintiff does not appear to oppose this argument.  Indeed, "'[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.'"[86]  Thus, to the extent Plaintiff has made a claim of vicarious liability against Sheriff Ard under Section 1983, that claim is dismissed with prejudice.

### 2. Policymaker

It is undisputed that Sheriff Ard is a policymaker for the LPSO; yet, Plaintiff contends that genuine issues of material fact exist regarding whether Defendant Brown was also a policymaker for the LPSO.[87]  However, "[t]he question of who constitutes a final policymaker is a legal question that turns on state law."[88]  Thus, this is not a question of fact to be decided by a jury but a question of law for the Court.

Plaintiff contends Brown was delegated policymaking authority for the following reasons:  Brown was promoted to Uniform Patrol Supervisor in 1999, served as Detective for some time, was later promoted to Warden of the Livingston Parish Jail Complex, and

---

[85] *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003).

[86] *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005)(quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987))).

[87] Although Sheriff Ard contends Plaintiff did not sue Defendant Brown in his official capacity (Rec. Doc. No. 47, p. 5), Plaintiff did, in fact, sue Defendant Brown in his official capacity in paragraph 1b of the original *Petition*.

[88] *Rodrigue v. Morehouse Detention Center*, 2012 WL 4483438 at *13 (W.D. La. Sept. 28, 2012)(citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)("Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.") (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (plurality opinion) (1986)).

33019

was a Major of Uniform Operations from 2012 through 2014 during which time he acted

in a supervisory position over several groups.[89]   Sheriff Ard counters that Plaintiff has

failed to present any evidence to show that Major Brown was a final policymaker for the

LPSO, and there is no evidence that Sheriff Ard delegated policymaking authority to

Brown for the training of LPSO deputies.[90]

> In determining whether Major Brown possesses final policymaking authority,

> "state law determines whether a particular individual is a county or municipality final decision maker with respect to a certain sphere of activity." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996) (citations omitted). "The final policymaker is the official or body upon whom state or local law has conferred the power to adopt rules governing the conduct of the entity's employees; merely granting an employee discretionary authority [does not make the employee a final policymaker]." *Lee v. Morial*, 2000 WL 726882 at *2 (E.D.La. 6/2/00) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) and *Jett v. Dallas Indep. School Dist.*, 7 F.3d 1241 (5th Cir.1993)). **Under Louisiana law, it is clear that "the Sheriff in his official capacity is the appropriate governmental entity responsible for any constitutional violations committed by his office**." *Jones v. St. Tammany Parish Jail,* 4 F.Supp.2d 606, 614 (E.D.La.1998) (citations omitted). Indeed, "the sheriff in his official capacity is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff." *Burge v. Parish of St. Tammany,* 187 F.3d 452, 470 (5th Cir.1999); *Thomas v. Frederick*, 766 F.Supp. 540 (W.D.La.1991) (citations omitted); *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So.2d 669 (La.1981).[91]

> In this case, there is no summary judgment evidence to support a finding that Major

Brown is a final policymaker for the LPSO.  There is no evidence that Brown consulted

with Sheriff Ard prior to arresting Plaintiff or that Sheriff Ard instructed Brown to take any

---

[89] *See* Rec. Doc. No. 40, p. 13.  Brown testified that he "oversaw 10 or 11 different divisions, including everybody in uniform; uniform patrol, civil processing, aviation, marine division, K-9, and others and facilitated their operations, helped them in any form or fashion."  Rec. Doc. No. 40-2, p. 90; Deposition of James Brown, p. 34, lines 5-9.

[90] Sheriff Ard also erroneously claims that Plaintiff did not sue Major Brown in his official capacity; however, the *Petition* does name Brown "individually and in his official capacity as the Uniform Operations Major" for the LPSO.  Rec. Doc. No. 1-2, ¶ 1(d).

[91] *Causey v. Parish of Tangipahoa*, 167 F.Supp.2d 898, 907 (E.D. La. 2001)(emphasis added).

33019

such actions prior to Plaintiff's arrest.  Plaintiff has made much of Brown's supervisory positions within the LPSO.[92]  However, the law is clear that "[c]ity policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals.... [T]hey are not supervised except as to the totality of their performance."[93]  "[The court's] analysis must also take into account the difference between final decision making authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] ... [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function."[94]  Thus, while Major Brown may have had final decisionmaking authority in supervisory positions he held at certain times, there is no evidence that he was the final policymaker for the LPSO or that such authority was ever delegated to him.

### 3.  Policy or Custom Violating Protected Rights - Failure to Train/Supervise

Sheriff Ard moves for summary judgment on this claim arguing that Plaintiff has not even alleged in his *Petition* or *First Supplemental and Amending Complaint* that any official custom or policy exists, or that such policy caused the alleged constitutional deprivation suffered.  Plaintiff responds citing the Supreme Court's holding that "the failure

---

[92] Plaintiff makes a seemingly incongruous argument regarding Major Brown's status.  On one hand, Plaintiff contends Brown had been delegated such power and authority that he constitutes a policymaker for purposes of *Monell* liability, yet Plaintiff also contends Brown was so inadequately trained that he couldn't make a proper arrest and presents evidence that Brown was disciplined and demoted allegedly for his actions with regard to Plaintiff.  This evidence further undermines the argument that Major Brown had such final policymaking authority for the LPSO.

[93] *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir.1984).

[94] *Bolton v. City of Dallas*, 541 F.3d 545, 548–49 (5th Cir.2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir.1993) (explaining distinction between final policymaking authority and mere decision making).

33019

to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury."[95]

In *City of Canton v. Harris*,[96] the Supreme Court set forth the standard for asserting a failure to train claim articulating that "[t]he inadequacy of [a] training policy may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[97]  "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the City can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury."[98]  However, it is not enough to establish that a particular officer was inadequately trained, or that the injury could have been avoided with more or better training.[99]  Furthermore, proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before liability may attach.[100] Also, the inadequacy must be obvious and obviously likely to result in a constitutional violation.[101]  "Federal courts will

---

[95] *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).
[96] *Id.*
[97] *Id.* at 388.
[98] *Id.* at 390.
[99] *Id.* at 391.
[100] *Thompson v. Upshur County*, 245 F.3d at 458 (5th Cir. 2001) citing *Snyder v. Trepagnier*, 142 F.3d 791, 798–99 (5th Cir.1998) and *Belt,* 828 F.2d at 304–305.
[101] *Id.*
33019

not second-guess municipal employee training programs and will only find municipalities liable when a failure to train reflects a deliberate or conscious municipal choice."[102]

As for Plaintiff's failure to supervise or train claim arising under 42 U.S.C. § 1983, he must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[103]  "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."[104]  However, "mere proof that the injury could have been prevented if the officer received better or additional training cannot, without more, support liability."[105]  In order to establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'"[106]  However, "[w]here a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability."[107]

While Sheriff Ard claims that Plaintiff has identified no policy or custom, he also contends Plaintiff has failed to present summary judgment evidence that any such policy or custom was the "moving force" behind the alleged constitutional deprivation.  Sheriff Ard further argues that Plaintiff has no summary judgment evidence to establish deliberate indifference as Plaintiff presents no evidence of a pattern of similar conduct.

---

[102] *N.S. v. City of Alexandria*, 919 F.Supp.2d 773, 781 (W.D. La. 2013 (citing *City of Canton*, 489 at 392).
[103] *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998).
[104] *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).
[105] *Id.*
[106] *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)(citing *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)).
[107] *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).
33019

Plaintiff counters that there is "ample" evidence that the LPSO deputies involved herein were inadequately trained, supervised, or assessed on use of force.  Plaintiff offers as summary judgment evidence Defendant Brown's testimony that he could only remember a single training class on the use of force "a long time ago,"[108] and he could not recall the last time he had defensive tactics training.[109]  Deputy Holden testified that, although he had been employed by LPSO for two years, he could not remember when he was last trained in use of force other than at the police academy.[110]  As for Deputy Winburn, Plaintiff contends he did not complete his police academy training until November of 2012 although he had been employed as Detention Center deputy from 2009 until April 2012 and then served as a Uniform Patrol Deputy from April 2012 to October 2013.[111]  Plaintiff contends this constitutes a violation of La. R.S. 40:2405(A)(1), which requires a law enforcement officer to obtain training and certification within one year.

Sheriff Ard responds that Plaintiff has only taken issue with the timing of the training of these deputies; however, his evidence does, in fact, establish that all of them were trained.  Moreover, Sheriff Ard points out that Plaintiff refers only to the inference of the need for more training, but fails to carry his burden of presenting evidence that shows either how any training program was specifically defective, or that Sheriff Ard was on notice of the deficiency of any such training program.  Sheriff Ard contends that Plaintiff's

---

[108] Rec. Doc. No. 40-2, p. 80, Deposition of Jim Brown, p. 20, line 18.
[109] *Id.* at 81, Deposition of Jim Brown, p. 22.
[110] *Id.* at 125-126, Deposition of Adam Holden, pp. 30-31.
[111] *Id.* at pp. 63-66, Deposition of Winburn, pp. 9-12.

33019

evidence establishes only that each deputy about whom he complains was subjected to training prior to any encounters with Plaintiff.

The Court finds that Plaintiff has presented insufficient summary judgment evidence to carry his burden of establishing that Sheriff Ard engaged in a widespread municipal policy of failing to train his officers or that any alleged failure to train or supervise was the direct cause of Plaintiff's alleged injuries.  While Plaintiff has raised issues with the timing and perhaps the adequacy of the training of the deputies involved, it is insufficient as a matter of law to present "mere proof that the injury could have been prevented if the officer received better or additional training."[112]  Moreover, the Court finds that Plaintiff's evidence in no way establishes "with specificity how a particular training program was defective."[113]  Rather, Plaintiff's evidence appears only to take issue with the timing of the training and perhaps the adequacy of the training, although no evidence is presented on the adequacy of any training, specifically to a particular program or officer. Because Plaintiff has not specifically identified how the officers' training regimen was lacking, or provided sufficient supporting evidence therefor, Sheriff Ard is entitled to summary judgment on this claim.

Furthermore, even if Plaintiff had submitted evidence to create genuine material fact disputes on this issue, he fails to present summary judgment evidence of deliberate indifference, which also forecloses this claim.

As to the supervision portion of Plaintiff's claim, the Plaintiff must identify the supervisor who allegedly failed to perform the necessary duties and demonstrate that the

---

[112] *See supra.* n. 105.
[113] *Supra.* n. 104.
33019

identified individual(s) "had subjective knowledge of a serious risk of harm to the victims [or a category of people]."[114]   No evidence, argument, or jurisprudence has been offered regarding the "supervision" portion of Plaintiff's failure to train/supervise claim, and Plaintiff has failed to provide any specifics as to this theory of liability; thus, the Court finds that this claim as it relates to supervision is abandoned.  On the current record, the Court is left to guess as to specific facts that would support such a theory.  Mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment.[115]   Hence, summary judgment as to the claim of a policy or custom of inadequate supervision is appropriate in favor of Sheriff Ard.

    4.   Deliberate Indifference

    Sheriff Ard also claims Plaintiff has failed to present evidence sufficient to establish a genuine issue of material fact on the issue of deliberate indifference.  In *City of Canton*, the Supreme Court held that, "only where failure to train reflects a 'deliberate' or 'conscious' choice by a municipality to endanger constitutional rights can a municipality be liable for such a failure under § 1983."[116]   It is only where "the need for more or different training is so obvious, and the inadequacies so likely to result in the violation of constitutional rights, that the [municipality] can reasonably be said to have been deliberately indifferent."[117]    Deliberate indifference is a stringent standard of fault,

---

[114] *Franklin v. Doyle*, No. 1:09-CV-931, 2012 WL 2715694 at *17 (E.D. La. July 9, 2012)(quoting *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 255 (5th Cir. 2005)).
[115] *Brock v. Chevron U.S.A., Inc.*, 976 F.2d 969, 970 (5th Cir.1992).
[116] *City of Canton*, 489 U.S. at 389.
[117] *Id.* at 390.
33019

requiring proof that the municipality disregarded a known or obvious consequence of its actions.[118]

A plaintiff demonstrates the need for more or different training by coming forward with evidence of "at least a pattern of similar incidents in which the citizens were injured."[119]  In other words, proof of a single incident is, as a general matter, insufficient to hold a municipality liable for inadequate training.[120]  "Requiring plaintiffs to demonstrate a pattern in failure to train cases ensures that the municipality was on notice of the program's inadequacies, thereby warranting the assumption that the municipality's inaction reflects a conscious policy choice."[121]

It is well settled that a plaintiff cannot merely allege that the training program represents a policy for which the municipality is responsible to hold the municipality liable.[122]  Rather, the issue is whether the training program is adequate, and, if not, whether the inadequacies can fairly be said to represent municipal policy.[123]  Moreover, mere negligence on the part of the municipality in implementing a training program falls short of the deliberate indifference standard.[124]

Further, deliberate indifference is not shown by evidence that "a particular officer may be unsatisfactorily trained."[125]  This is because a particular officer's shortcomings may have resulted from factors other than an inadequate training program.[126]  Nor does

---

[118] *See Bryan County*, 520 U.S. 397, 117 S.Ct. at 1391.
[119] *See Snyder*, 142 F.3d at 798.
[120] *Id.*
[121] *Wilson v. Vickery*, 267 F.Supp.2d 587, 598 (E.D. Tex. 2002).
[122] *Id.*, citing *City of Canton*, 489 U.S. at 389.
[123] *Id.*
[124] *Id.*, citing *Snyder*, 142 F.3d at 796.
[125] *City of Canton*, 489 U.S. at 390-91.
[126] *Id.*
33019

it suffice to prove that a violation could have been avoided if an officer had more or better training, for it is well settled that "adequately trained officers occasionally make mistakes."[127]  Therefore, a mistake on the part of an officer will not serve as evidence of an inadequate training program.[128]

"Finally, the Supreme Court has expressed serious concerns over the prudence of allowing failure to train claims and has said that such claims only lie in limited circumstances."[129]  The Court cautioned against the federal judiciary engaging in an "endless exercise of second-guessing municipal employee training programs."[130]  This is because courts are "ill suited" to the task and "serious questions of federalism" are implicated thereby.[131]

In this case, even if Plaintiff had presented an official policy or custom of failing to train/supervise, Sheriff Ard contends Plaintiff has failed to present summary judgment evidence that such policy or custom was deliberately indifferent to the constitutional rights of citizens.  Sheriff Ard argues that Plaintiff has not presented evidence of a pattern of negligent training or supervision that caused similar constitutional violations to those alleged by Plaintiff.

Plaintiff contends he has presented sufficient evidence establishing a "pattern" of failing to train/supervise based on the following:  Brown could only remember a single class taken on the use of force a long time ago; Holden, employed two years with the LPSO, could not remember training since the police academy; Winburn allegedly did not

---

[127] *Id.*
[128] *Id.*
[129] *Wilson*, 267 F.Supp.2d at 599, citing *Snyder*, 142 F.3d at 795.
[130] *City of Canton*, 489 U.S. at 392.
[131] *Id.*
33019

complete the police academy prior to being employed as a patrol deputy; and Winburn testified that he received training only through the police academy and none with the LPSO.  Plaintiff also cited two lawsuits[132] brought against the LPSO for failure to train for the proposition that there is a pattern showing the widespread policy of failing to train deputies of the LPSO.  Plaintiff further contends it is reasonable for a jury to conclude that this failure was the cause of Plaintiff's injuries.

Sheriff Ard counters these arguments, asserting that Plaintiff has not alleged that any of these deputies/officers were *not* trained; rather, he takes issue only with *when* they were trained.  It is undisputed from the record in this matter that all three deputies/officers were, in fact, trained.  Further, Sheriff Ard contends Plaintiff has submitted no evidence to establish that the timing of the training of these officers directly caused the alleged injuries to him.  With respect to the two prior lawsuits cited by Plaintiff, Sheriff Ard argues that neither case resulted in a dispositive finding that the LPSO had a deficient training program.  Thus, the Court should not consider these unsubstantiated allegations sufficient to establish a pattern showing deliberate indifference.

Based on the summary judgment record in this case, the Court finds that Plaintiff has failed to present a material issue of fact that Sheriff Ard's training policy was deliberately indifferent to the constitutional rights of the citizenry.  In *Harvey v. Montgomery County, Texas*,[133] the court noted:

> However, "[a] pattern requires 'sufficiently numerous prior incidents' as opposed to 'isolated instances.'" *Oporto,* 2010 WL 3503457, at *5 (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir.1989)). "Where

---

[132] *Livermore v. Arnold*, 2013 WL 958637 (M.D. La. Mar. 12, 2013) & *Cox v. Columbia Cas. Co.*, 2014 WL 29456 (M.D. La. Jan. 3, 2014).
[133] 881 F.Supp.2d 785, 797 (S.D. Tex. 2012).

33019

prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir.2009) (quoting *Webster*, 735 F.2d at 842). In other words, the practice must be "'persistent and widespread.'" *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir.2002) (quoting *Piotrowski,* 237 F.3d at 581). For example, the Fifth Circuit concluded that 27 incidents of police excessive force complaints between 2002 and 2005 would not establish excessive force because the police department employed more than 1,500 officers and reported more than 67,000 instances of crime per year. *Peterson*, 588 F.3d at 851. Similarly, the Fifth Circuit determined that eleven offense reports were not competent summary judgment evidence of a pattern of unconstitutional searches. *Pineda*, 291 F.3d at 329. Among other shortcomings, the Court of Appeals concluded that "the sample of alleged unconstitutional events [was] just too small." *Id.*[134]

The Court finds that, even accepting as true each allegation by Plaintiff, too small a sample has been presented to justify a finding of a widespread policy that is deliberately indifferent. Indeed, "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[135] This requires either some "actual or constructive notice."[136] Plaintiff has failed to present evidence that Sheriff Ard knew or had constructive knowledge of the alleged inadequate training of the deputies/officers involved in this case, or that the conduct at issue was the "known or obvious" consequence of the failure to train. Summary judgment is appropriate in favor of Sheriff Ard on the Section 1983 failure to train/supervise claim.[137]

---

[134] *Id.* at 797.

[135] *Conncik v. Thompson*, 131 S.Ct. 1350, 1360 (2011) (quoting *Board of County Commissioners of Bryan County. v. Brown*, 520 U.S. 397, 410 (1997)) (internal quotation marks omitted).

[136] *Id.*

[137] The Court notes that neither party submitted evidence or argument on the "supervise" aspect of the claim; therefore, the Court considers that claim abandoned and the claim to be failure to train.

33019

## C. Discretionary Immunity Under Louisiana Law

Plaintiff has also alleged a state law tort claim against Sheriff Ard for failure to train/supervise.  Sheriff Ard likewise moves for summary judgment on this claim asserting the defense of discretionary immunity provided by La. R.S. 9:2798.1.[138]  Plaintiff contends Sheriff Ard is not entitled to discretionary immunity because the requirement to train and supervise police officers is not a discretionary choice but is required by law.[139]   Plaintiff alternatively contends that, if the Court finds that training/supervising officers is a discretionary act, then genuine issues of fact remain regarding whether the LPSO training/supervision in this case was reckless, outrageous, or intentional based on the evidence presented.

Because Plaintiff's arguments are contrary to well-settled jurisprudence, the Court finds that Sheriff Ard is entitled to summary judgment on the state law claim for negligent failure to train/supervise pursuant to the discretionary immunity provided by La. R.S. 9:2798.1.  Sheriff Ard cites *Hoffpauir v. Columbia Casualty Company*,[140] where the plaintiffs brought a state law claim for the alleged negligent hiring, training, retention, or

---

[138] LA. R.S. § 9:2798.1 provides, in pertinent part:
> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
> ...
>
> C. The provisions of Subsection B of this Section are not applicable:
> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

[139] Plaintiff cites La. R.S. 40:2401 which describes the education and training required for peace officers of this state.

[140] 2013 WL 5934699 (M.D. La. Nov. 15, 2013).

33019

supervision of LPSO deputies.  The *Hoffpauir* court, in direct contravention to Plaintiff's

assertion, held that:

> the hiring, training, and supervision policy of the Livingston Parish Sheriff's Department is a discretionary function. Like in *Smith*, the plaintiffs have failed to point to a Louisiana statute mandating a particular policy or procedure for hiring, training, supervising, or screening officers; and the court's review has also failed to uncover any relevant statute mandating a policy or procedure. Accordingly, the sheriff's department's hiring, training, retention, and supervision policy are discretionary functions, for which Louisiana Revised Statutes § 9:2798.1 grants the officers and the department immunity.[141]

While Plaintiff has pointed to La. R.S. 40:2401, which mandates that education and

training is required for peace officers, this statute does not set forth any specific policy

requirements.  Clearly, the lack of any specified requirements reveals that the method

and manner in which peace officers are trained is left to the discretion of law enforcement.

Moreover, *Hoffpauir* is consistent with Fifth Circuit jurisprudence on this issue.  In

*Roberts v. City of Shreveport*,[142] addressing a state law tort claim against a Police Chief

for failure to train his officers, the Fifth Circuit held as follows:

> Chief Prator had a wide variety of options for training officers under his command; no law, regulation, or policy of the State of Louisiana explicitly directed his course of action.  Further, his training and supervisory decisions are grounded in policy considerations; he had to assess the community's needs, contemplate the types of situations his officers would face, and ultimately reconcile his training decisions with the department's budget. Because his actions meet both prongs of the discretionary immunity test, Chief Prator is immune from the plaintiffs' state law tort claims.

---

[141] *Id.* at *12.  *See also Curran v. Aleshire*, 67 F.Supp.3d 741, 763-64 (E.D. La. 2014)("It is clear that Sheriff Strain's decisions to hire, train, supervise and retain officers are part of his discretionary power within the course and scope of his lawful powers and duties as sheriff. *See* (Rec. Doc. 44–8) (noting that "he ... employs hundreds of deputies ..."); *See, e.g., Smith v. Lafayette Parish Sheriff's Dept.*, 874 So.2d 863, 868 (La.App. 3 Cir.2004) (finding that "Sheriff Breaux's hiring/retention policy was a discretionary act"); *Fontenot v. Toups*, 10–0954, 2011 WL 2214760 (E.D.La. June 6, 2011). No statute or regulation has been presented which otherwise proscribes the application of these powers in this context.).
[142] 397 F.3d 287 (5th Cir. 2005).

33019

To be clear, Sheriff Ard has not sought in this motion, and the Court does not grant summary judgment in favor of the Sheriff for the tortious conduct allegedly committed by Defendant Brown.  However, as to the claim that the LPSO has a defective training program under state tort law, summary judgment in favor of Sheriff Ard is proper.  The Court does not find a disputed issue of material fact as to whether Sheriff Ard's actions in this regard constitute "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct."[143]

### D. Vicarious Liability for State Law Torts[144]

Plaintiff has also brought claims asserting that Sheriff Ard is vicariously liable for the state law torts committed by his deputies, and Plaintiff refers to "the alleged use of intimidation, threats, battery, and harassment," and intentional infliction of emotional distress (IIED).[145]  As Sheriff Ard readily admits, any claims of vicarious liability for the acts of Major Brown are not the subject of this motion and are not before the Court at this time.  Thus, the Court is analyzing the claims made against various "Livingston Parish

---

[143] La. R.S. 9:2798.1(C)(2).

[144] As Sheriff Ard correctly points out, nowhere in Plaintiff's original *Petition* or his *Amended Complaint* is there an allegation that Plaintiff defecated on himself and was not allowed to shower at the jail.  Nor is there an allegation that Plaintiff was refused medical treatment at the jail.  Plaintiff has raised these conditions of confinement and refusal of medical treatment claims for the first time in his summary judgment *Opposition.* The Court has the discretion to treat this new claim as a motion to amend under Rule 15(a), *see Stover v. Hattiesburg Pub. School Dist.*, 549 F.3d 985, 989, n. 2 (5th Cir. 2008) (citing *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir.1992)); however, Plaintiff is not *pro se* and has already amended his *Complaint.*  As such, the Court will follow the direction of the Fifth Circuit and its district courts in their holdings that "a court need not consider new arguments raised for the first time in a summary judgment reply brief." *Elwakin v. Target Media Partners Operating Co., L.L.C.*, 901 F.Supp.2d 730, 745 (citing *Doe ex rel. Doe v. Beaumont Independent School District*, 173 F.3d 274, 299 n. 13 (5th Cir. 1999)).  Considering the procedural posture of this case, and the fact that Plaintiff has previously been granted leave to amend his *Complaint*, the Court will not consider this "new evidence" which alleges a claim regarding Plaintiff's conditions of confinement while in custody.  Notably, even if the Court would consider these claims, Plaintiff admitted in his deposition that he did not inform anyone at intake that he had soiled himself, *see* Rec. Doc. No. 40-2, p. 25, Deposition of Joseph Alvin St. Romain, Jr., p. 65, lines 20-22, and he admitted that he did initially meet with staff from the medical department, *id.*, lines 17-19.

[145] Rec. Doc. No. 40, p. 18.

33019

deputies."[146]  Further, in the Court's view, the only actionable torts being pled against the deputies are possibly assault and IIED.[147]

Under Louisiana law, "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."[148]  "A battery is an intentional harmful or offensive contact with another.[149]  Mere words do not constitute an assault.[150]  Yet, a combination of threats, present ability to carry out the threats, and reasonable apprehension of harmful or offensive contact may suffice.[151]

The elements of an IIED claim under Louisiana law are: (1) the conduct of the defendant was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant desired to inflict severe emotional distress and knew that severe emotional distress would be substantially certain to result from the conduct.[152]  The defendant's "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[153]  Liability for IIED does not arise from "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[154]  A

---

[146] *Id.*

[147] While Louisiana state court jurisprudence does recognize that harassment can rise to the level of an actionable stand-alone tort under the right circumstances, *see Wright v. Otis Eng'g Corp.*, 94-257 (La. App. 3 Cir. 10/5/94); 643 So.2d 484, 487 (citing *Bustamento v. Tucker*, 607 So.2d 532, 538, n. 6 (La.1992)), Plaintiff has not presented argument or applicable jurisprudence that the harassment alleged falls outside of his claim for IIED.  Plaintiff has not argued the continuing tort doctrine or made the argument that this case should be treated like those where a separate tort of harassment has been found based on the circumstances of those cases.

[148] La. R.S. 14:36.

[149] *Groff v. Southwest Beverage Co., Inc.*, 2008-625 (La. App. 3 Cir. 11/5/08); 997 So.2d 782, 787, citing *Caudle v. Betts*, 512 So.2d 389 (La.1987).

[150] *Id.*, citing *Muslow v. A.G. Edwards & Sons, Inc.*, 509 So.2d 1012 (La.App. 2 Cir.1987), *writ denied*, 512 So.2d 1183 (La.1987).

[151] *Id.*, citing *Muslow*, 509 So.2d at 1012.

[152] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991).

[153] *Id.*

[154] *Id.*

33019

plaintiff's anguish must be "extreme" such that "no reasonable person could be expected to endure it."[155]

Excising the allegations relating to Brown's conduct, the alleged actions before the Court include:  Deputy Winburn told Plaintiff over the phone that he was "going to jail;"[156] Deputy Holden told Plaintiff that he was "going to get [Plaintiff]" along with crass comments that he was sleeping with Plaintiff's wife,[157] and, while incarcerated after one arrest, Plaintiff was allegedly subjected to threats and mistreatment by Deputy Holden who allegedly took Plaintiff's cell phone and demanded the passcode or he would "bust it into pieces."[158]

Sheriff Ard moves for summary judgment on these claims arguing that Plaintiff fails to articulate any actionable tort committed by LPSO deputies, nor does Plaintiff allege that any violence was inflicted upon him by Winburn or Holden.  If Plaintiff claims that these "threats" or "statements" constituted assault under Louisiana law, Sheriff Ard contends he is entitled to summary judgment because the law is clear that "mere words to not constitute an assault."[159]  Sheriff Ard further contends that Plaintiff has never alleged that any threats of violence were made upon him by the relevant deputies, and he specifically denied that force was used against him by either Holden or Winburn.[160]

As to the IIED claims, Sheriff Ard contends that the allegations made against the LPSO deputies are not sufficiently "extreme and outrageous" to support a claim of IIED.

---

[155] *Id.*
[156] Rec. Doc. No. 40-2, p. 76; Deposition of Cory Winburn, p. 32, lines 12-14.
[157] *Supra* n. 17.
[158] Rec. Doc. No. 40-2, p. 21; Deposition of Joseph Alvin St. Romain, Jr., p. 60.
[159] Rec. Doc. No. 30-1, p. 13, quoting *Muslow v. A.G. Edwards & Sons, Inc.*, 509 So.2d 1012 (La. App. 2 Cir. 1987)(internal quotations marks omitted).
[160] Sheriff Ard cites the Deposition of Joseph Alvin St. Romain, Jr., p. 43, lines 13-15; p. 88, lines 14-25.
33019

Because liability for IIED does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, Sheriff Ard argues that Plaintiff's evidence fails to show that the deputies' conduct rose above this level.  Further, any statement by a police officer that "you're going to jail" cannot be seen as extreme and outrageous in this case where Plaintiff readily admits breaking the law by violating a protective order.[161]

Without addressing the elements of either assault or IIED under Louisiana law, Plaintiff's *Opposition* merely refers to several of the alleged statements set forth above as he contends "these were not mere insults, but actions and threats made by persons acting under color of law."[162]   Plaintiff contends these statements "cannot be justified in a civilized society and suggest that the unlawful actions were made in spite, with malice, and with the specific intent to cause Mr. St. Romain emotional distress."[163]  Plaintiff cites *Sullivan v. Malta Park*[164] for the proposition that posing offensive questions (regarding a marital affair) alone is sufficient to state a claim for IIED.  However, for the same reason set forth in the Court's previous *Ruling*, the Court finds Plaintiff's reliance on *Sullivan* is misplaced.[165]

The Court finds that Sheriff Ard is entitled to summary judgment on Plaintiff's state

---

[161] Rec. Doc. No. 40-2, p. 24; Deposition of Joseph Alvin St. Romain, Jr.,  p. 63, line 9 through p. 64, line 11 where Plaintiff explains that he went to his ex-wife's house to retrieve his property in violation of the protective order and was sprayed with wasp spray).

[162] Rec. Doc. No. 40, p. 19.

[163] *Id.*

[164] 2014-0478 (La. App. 4 Cir. 12/10/14); 156 So.3d 751.

[165] Rec. Doc. No. 52, p. 9:  "In Sullivan, the court upheld a claim of IIED brought by a seventy year old plaintiff who was terminally ill and living in an assisted living facility against her adversary's lead attorney who repeatedly badgered her during a deposition with knowingly false questions that were immaterial and irrelevant to the legal matter at hand. There is simply no comparison to either the severity of conduct or the frailty of the alleged victim in Sullivan and the conduct and victim in the case before the Court."

33019

law tort claims regarding the conduct of various LPSO deputies, excluding Defendant Brown.   While it is true that police officers, presumably uniformed and armed with a weapon and badge, have the "present ability to carry out" any potential threats made, Plaintiff has not presented any evidence that any deputies threatened or actually inflicted physical violence on his person.   Accepting all of Plaintiff's allegations as true, Holden's alleged threat to destroy Plaintiff's phone, which was never carried out, was not an assault as it did not constitute the threat of an imminent battery upon the Plaintiff.   Likewise, statements to an arrestee that "you're going to jail" do not constitute the threat of an imminent battery.

With regards to IIED, Plaintiff's claims likewise fail.   In the context of the facts of this case, where Plaintiff was arguably in violation of a protective order,[166] the Court cannot find that a police officer making statements that "we're going to get you," and "you're going to jail" to be "extreme and outrageous" or beyond all possible bounds of decency such that no reasonable person could be expected to endure it.   Moreover, as to the alleged comments by Holden that he was sleeping with Plaintiff's wife, these comments made on one occasion do not rise above the level of "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."   While the Court acknowledges that such comments are indeed crass, rude, and unprofessional, there is no jurisprudence to support a finding that comparable conduct reaches the level of actionable IIED.   Summary judgment shall be granted in favor of Sheriff Ard on the state law tort claims of these LPSO deputies.

---

[166] The Court recognizes that, in some instances, Plaintiff disputes his knowledge of, and the parameters of, the existing protective orders.

33019

III.    **CONCLUSION**

For the reasons set forth above, the Defendant Sheriff Ard's *Motion for Partial Summary Judgment*[167] is GRANTED.   The claims involving Defendant Brown remain before the Court.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>July 22, 2016</u>.

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[167] Rec. Doc. No. 30.

33019